UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Latecia Stauch f/k/a Latecia Hardin Hunt,<br>          Plaintiff<br>v.<br><br>Horry County School District<br>                    Defendant. | Case No.:<br><br>**COMPLAINT**<br>(Jury Trial Requested) |

## JURISDICTION AND PARTIES

1. This suit is brought and jurisdiction lies pursuant to the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §2000e *et seq.*

2. All conditions precedent to jurisdiction under §706 of Title VII, 42 U.S.C. §2000e-5, have occurred or been complied with.

    a. A charge of employment discrimination on basis of sexual harassment was filed by the Plaintiff with Equal Employment Opportunity Commission ("EEOC"). The charge was referred to conciliation and then the U.S. Department of Justice took over the case.

    b. Notification of the Right to Sue was received from the U.S. Department of Justice on or about January 22, 2016.

    c. This Complaint has been filed within the 90 days of receipt of the U.S. Department of Justice's Notice of the Right to Sue.

3. Plaintiff, Latecia Stauch f/k/a Latecia Hardin Hunt, is a citizen and resident of the State of South Carolina, and resides in Horry County, South Carolina.

4. All discriminatory employment practices alleged herein were committed within the County of Horry, State of South Carolina.

5. Defendant, Horry County School District, (hereinafter referred to as "Horry,"), upon information and belief is a corporate governmental entity operating as a public school in the County of Horry, State of South Carolina.

6. Defendant Company, is a "person" within the meaning of §701 Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e.

7. Defendant Company, is an industry that affects commerce within the meaning of the Civil Rights Act of 1964, 42 U.S.C. §2000e.

8. Defendant Company employs fifteen (15) or more employees and is an "employer" within the meaning of the Civil Rights Act of 1964, 42 U.S.C. §2000e.

9. The parties, matters and all things and matters hereinafter alleged are within the jurisdiction of the Court.

## STATEMENT OF FACTS

10. On or about 2010, Plaintiff began working for Defendant Horry, as a teacher's aid and interventionist. In 2012, the Plaintiff began as a Special Education teacher.

11. At all times, the Plaintiff was efficient and effective in her work.

12. During Plaintiff's employment with Defendant Horry, Plaintiff was subjected to inappropriate sexual advances, comments and gestures by her assistant principal and evaluation team leader William Mayer, on numerous occasions.

13. The Plaintiff received a suggestive text message from Mr. Mayer on or about July 22, 2012 "the best nuts you'll ever put in your mouth; eat 'em like you mean it; try my nuts." Mr. Mayer asked the Plaintiff if he should get something for the Plaintiff from this place. The Plaintiff responded no and Mr. Mayer continued harassing as why not and stating "that's my favorite". The Plaintiff did not respond. Mr. Mayer continued texting the Plaintiff until she finally responded again with a no.

14. On or about July 27, 2012 Mr. Mayer began texting the Plaintiff about another teacher asking about her "big bootie" and if she was "into guys" and finally stating that he was a "boob man."

15. On or about July 27, 2012, the Plaintiff asked Mr. Mayer through text message if he was stalking her after he text her to have fun at work.

16. On or about July 28, 2012, Mr. Mayer text the Plaintiff and asked "how would u rate yourself in bed."

17. On several occasions Mr. Mayer would come to the Plaintiff's residence and confront the Plaintiff's roommate Courtney Royals. Mr. Mayer would beg Ms. Royals to get the Plaintiff to come outside and talk to him. Mr. Mayer would also wait outside and text the Plaintiff repeatedly to come outside. Mr. Mayer would come to the Plaintiff's house intoxicated and push his way into the Plaintiff's house and sit on the couch. Mr. Mayer then passed out on the Plaintiff's couch until the Plaintiff was able to wake him up and make him leave.

18. On or about November 22, 2012, the Plaintiff received a message from Mr. Mayer stating that if the Plaintiff would hang out with Mr. Mayer he "wouldn't be so aggressive."

19. On or about January 25, 2013, Mr. Mayer told the Plaintiff he had secured her a coaching position for the softball team. Mr. Mayer then asked the Plaintiff what his reward would be.

20. In February 2013, the Plaintiff was confronted by Mr. Mayer stating that the Plaintiff was wearing incorrect shoes. Mr. Mayer stated that the Plaintiff better come around with some "favors" for him since he was doing the Plaintiff a favor by not making her change her shoes. The Plaintiff told Mr. Mayer she did have on appropriate shoes and that if he did not stop harassing her she would report him.

21. On or about March 12, 2013, Mr. Mayer told the Plaintiff that her evaluation meeting was coming up and that she needed to meet him in the book room because there were no cameras in there.

22. On or about April 2013, during a sports banquet, Mr. Mayer told the Plaintiff that all of the dad's would be staring at the Plaintiff in her dress. Mr. Mayer told the Plaintiff that he wished he "could get up in it" and that the Plaintiff needed to quit being "stingy." Mr. Mayer told the Plaintiff that he had done enough for the Plaintiff at work to earn a reward. Mr. Mayer also stated that the Plaintiff's boyfriend "can't treat [Plaintiff] like [Mr. Mayer] would in the bedroom."

23. In May 2013, the Plaintiff reported the sexual harassment to the human resource director, Dr. Addie Swinney, and gave a statement.

24. The Plaintiff was retaliated against immediately and moved from the school to the district office for the last two weeks of the school year.

25. On or about June 7, 2013, the Plaintiff was further retaliated against when she received an email from the Defendant stating that she had been moved from Ocean Bay Middle School to Conway High School for the upcoming school year, which is a considerable distance from the Plaintiff's home.

26. On or about June 24, 2013, the Plaintiff emailed Dr. Swinney and asked if there was an appeal to the relocation. The Plaintiff did not receive a response from Dr. Swinney.

27. The Plaintiff was further retaliated against during the school year when she did not receive the necessary work books, text books, and other teaching materials to teach her class or complete her curriculum. The Plaintiff asked for the requested materials throughout September 2013.

28. On or about October 29, 2013, the Plaintiff again emailed Dr. Swinney, Mollie Laut, and Kenneth Generette regarding the retaliation received.

29. On or about November 1, 2013, the Plaintiff received an email containing a calendar invite for a meeting with Dr. Swinney on November 1, 2013.

30. After the meeting, the Plaintiff received a letter stating the Defendant had put her on conduct suspension. The Plaintiff emailed the Defendant and they stated that the letter was an error and not to leave her position.

31. On or about March 25, 2014, the Plaintiff emailed the Defendant's human resource department regarding being placed on leave. The Plaintiff's email was not responded to.

32. On or about April 10, 2014, the Plaintiff received a letter from Dr. Swinney notifying the Plaintiff that she was on administrative leave as a result of allegations of misconduct. The letter further stated that the Defendant was continuing to investigate the matter but the outcome was pending.

33. On or about April 11, 2014, the Plaintiff received an additional letter from the Defendant enclosing the Plaintiff's employment contract for the upcoming school year.

34. The Plaintiff emailed Dr. Swinney regarding the letters received and her confusion as to being on leave. The Plaintiff was informed that the letter was sent in error.

35. On or about June 1, 2014, the Plaintiff received a letter stating that her benefits were terminated June 1, 2014.

36. The Plaintiff began teaching during the 2014-2015 school year. The Plaintiff's benefits were restored in October 2014.

37. On or about April 2015, the Plaintiff requested a transfer to a different teaching area. The Plaintiff was informed that she needed to fill out a Statement of Resignation to apply for the different position.

38. On or about April 14, 2015, the Plaintiff completed the a form requesting a transfer and explaining that she wanted to leave the special education area and teach social studies. The form was also witnessed and signed by Janice Christy.

39. On April 23, 2015, the Plaintiff received a letter from Dr. Swinney accepting the Plaintiff's resignation effective July 1, 2015.

40. The Plaintiff emailed Dr. Swinney expressing she did not resign, she just asked for a transfer. Dr. Swinney stated that she would look into the matter.

41. In a final retaliation against the Plaintiff, the Defendant did not reinstate the Plaintiff into the district and terminated her position.

42. It was the duty of Defendant, by and through their agents, servants and/or employees, to prevent such acts and behavior from occurring and to stop it once the behavior had been reported by the Plaintiff.

43. Despite her reporting the behavior, Defendant did not take appropriate action to resolve the problems and disciplined the Plaintiff for Mr. Mayer's inappropriate behavior upon her.

44. That the unjust disciplinary actions and termination of the Plaintiff was the response by Defendant, its agents and servants, to Plaintiff's reports and complaints of lewd and inappropriate behavior of Mr. Mayer including sexual harassment.

45. Following her complaints and following the retaliatory actions, the Defendants then terminated the Plaintiff.

46. That the aforesaid conduct of Defendant Company, its agents and servants, violates South Carolina and United States laws against retaliatory dismissal and was, in fact, retaliatory in nature, created a hostile work environment and was in violation of Title VII of Civil Rights Act of 1964, as amended (42 USCS §§ 2000e et seq.).

47. As a direct and proximate result of the acts and practices of Defendant in retaliating against Plaintiff, creating a hostile work environment and in the constructive discharge of Plaintiff from employment, the Plaintiff has suffered and continues to suffer from emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, damage to Plaintiff's reputation and other past and future losses.

## FOR A FIRST CAUSE OF ACTION
## SEXUAL HARASSMENT TITLE VII OF CIVIL RIGHTS ACT OF 1964

48. The Plaintiff reiterates and realleges each and every allegation as if fully set forth herein.

49. Defendant Company as Plaintiff and Mr. Mayer's employer were wanton, and intentional in the harassment of the Plaintiff in the following particulars, to wit:

    a. In visual, physical, and verbal contact by sexual advances and gestures that were initiated, maintained, and repeated after being informed by the Plaintiff that the contact was unwanted;
    b. In continually allowing Mr. Mayer to maintain his presence near the Plaintiff while at work in an uncomfortable and inappropriate manner.
    c. In refusing to remove the Plaintiff from the hostile work environment and sexual harassment.

50. That by reason of the aforesaid recklessness, willfulness and wantonness of Defendant, Plaintiff has suffered injuries, both physically and mentally.

51. The Defendants violated the Civil Rights of the Plaintiff within Title VII of Civil Rights Act of 1964, as amended (42 USCS §§ 2000e et seq.), 46 ALR Fed 224 by retaliating against Plaintiff and allowing a hostile work environment to exist regarding sexual harassment in the workplace.

52. As a direct and proximate result of the acts and practices of Defendant in the termination of Plaintiff from employment, the Plaintiff has suffered and continues to suffer from emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, damage to Plaintiff's reputation and other past and future losses.

53. In failing to protect the Plaintiff from sexual harassment, preferential treatment or retaliation, the Defendants acted with malice or reckless indifference to the federally protected right set out under Title VII of Civil Rights Act of 1964, as amended (42 USCS §§ 2000e et seq.), the South Carolina Human Affairs Law and the Equal Employment Opportunity Act.

54. The Defendants violated Title VII of Civil Rights Act of 1964, as amended (42 USCS §§ 2000e et seq.), and the South Carolina Human Affairs Law by allowing the sexual harassment, hostile work environment and retaliation to exist in the workplace.

55. The Defendants wrongful actions as set forth aforesaid constituted a hostile work environment for the Plaintiff. The Defendants violated Title VII of the Civil Rights Act of 1964, as amended (42 USCS §§ 2000e et seq.), by allowing a hostile work environment to exist regarding sexual harassment and retaliation in the workplace.

56. That the aforesaid conduct of the Defendants, its agents and servants, violates South Carolina and United States laws against retaliatory discharge and was, in fact, retaliatory in nature and in violation of Title VII of Civil Rights Act of 1964, as amended (42 USCS §§ 2000e et seq.).

57. The Defendants employment discrimination of the Plaintiff has caused, continues to cause, and will cause the Plaintiff to suffer substantial damages for pecuniary losses, embarrassment, humiliation, pain and suffering, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

58. The Plaintiff is entitled to injunctive relief and/or civil damages from the Defendants as a result of the employment discrimination as alleged above.

59. Due to the acts of the Defendants, their agents and employees, the Plaintiff is entitled to injunctive relief and/or civil damages, back wages, plus interest, payment for lost benefits, and reinstatement of benefits and front pay.

60. That the termination of the Plaintiff with the Defendants was the response by the Defendants, their agents and servants, to the Plaintiff's reports and complaints of lewd and inappropriate behavior of Mr. Mayer including sexual harassment.

61. As a direct and proximate result of the acts and practices of the Defendants in retaliating against the Plaintiff, creating a hostile work environment and in the retaliatory discharge of the Plaintiff from employment, the Plaintiff has suffered and continues to suffer lost wages and benefits, loss of front pay and benefits from emotional pain and suffering,

mental anguish, humiliation, loss of enjoyment of life, damage to the Plaintiff's reputation and other past and future losses.

## REQUEST FOR RELIEF

62. Plaintiff reiterates and realleges each and every allegation as if fully set forth herein.

63. Due to the acts of the Defendant, Plaintiff suffered great emotional and mental distress, terror, fright, revulsion, disgust, humiliation, embarrassment, shock and indignities, lost wages, loss of front pay, back pay and other work benefits.

64. That by reason of such wrongful acts of the Defendant, the Plaintiff has been damaged in such an amount to be determined by the trier of fact.

WHEREFORE, Plaintiff prays for the following relief:

1. Judgment in favor of the Plaintiff and against Defendant for all causes of actions in an amount which is fair, just and reasonable, and for compensatory damages;

2. Prejudgment interest, costs and attorneys fees as may be allowed by law;

3. Judgment in favor of the Plaintiff and against Defendant with back pay and associated benefits she would have earned with all lost or diminished benefits such date to be determined by the trier of fact;

4. Judgment in favor of the Plaintiff and against Defendant for front pay and any other work benefits she lost in an amount to be determined by the trier of fact;

5. Judgment in favor of the Plaintiff and against Defendant for pain and suffering, embarrassment and humiliation, and emotional distress in an amount to be determined by the trier of fact; and

6. Judgment against Defendant, in such an amount of actual damages, punitive damages, attorney fees, costs of this action and any other relief this Honorable Court deems allowable under law, and just and proper.

**WIGGER LAW FIRM, INC.**

s/*Joshua T. Howle*
Joshua T. Howle (Federal I.D. #11759)
Attorney for the Plaintiff
8086 Rivers Avenue
North Charleston, SC  29406
(843) 553-9800

Charleston, South Carolina
April 19, 2016